UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**CELICIA HOOVER-HANKERSON,**      )
                                   )
       **Petitioner,**        )
                                   )
       v.                     )  Criminal Action No. 03-188 (RWR)
                                   )
**UNITED STATES OF AMERICA,**      )
                                   )
       **Respondent.**        )
_____)

## MEMORANDUM OPINION

    A jury convicted *pro se* petitioner Celicia Hoover-Hankerson of conspiracy, theft from programs receiving federal funds, and first degree fraud. Her conviction was affirmed on direct appeal. She now moves under 28 U.S.C. § 2255 to vacate her sentence, arguing that her attorneys were ineffective in numerous respects, and that there was no jurisdiction to impose the sentence imposed in this case. The government opposes Hoover-Hankerson's motion, arguing that she is unable to show prejudice, that her allegations are false and conclusory, and that her sentencing claim is procedurally barred because it was not raised on direct appeal. Because Hoover-Hankerson's claims are unsubstantiated and she failed to raise on appeal the claim challenging her sentence, her § 2255 motion will be denied.

## BACKGROUND

A detailed history of this case is recited in <u>United States v. Hoover-Hankerson</u>, 406 F. Supp. 2d 76, 78-81 (D.D.C. 2005), <u>aff'd</u>, 511 F.3d 164 (D.C. Cir. 2007). In brief, Hoover-Hankerson was a Criminal Justice Act ("CJA") attorney and her brother and co-conspirator, Benjamin Hoover, was a part-time criminal defense investigator, both serving in the D.C. Superior Court. (Trial Tr., June 28, 2004, at 189:18-20; <u>id.</u> at 152:14-15, 202:6-7.) As a CJA attorney, Hoover-Hankerson obtained and signed blank witness vouchers that Hoover and others distributed to people who never appeared as witnesses in Superior Court cases. The recipients cashed the vouchers at Superior Court, and the defendants pocketed a share of the proceeds. (<u>See, e.g.,</u> Trial Tr., June 29, 2004, at 88-100.) Hoover-Hankerson signed out over 2,000 blank witness vouchers from the Superior Court Finance Office during the course of the conspiracy (<u>see</u> Trial Tr., June 30, 2004, at 222-23), and together, she and Hoover managed to misappropriate over $74,000 from the witness voucher program. (<u>See</u> Partial Tr. of Sent. Proceedings, Mar. 17, 2006, at 54:24-25.) On May 2, 2003, Hoover-Hankerson and Hoover were indicted on charges of conspiracy under 18 U.S.C. § 371, two counts of theft from programs receiving federal funds under 18 U.S.C.

§ 666(a)(1)(A), and two counts of fraud in the first degree under D.C. Code § 22-3821(a) (now codified at D.C. Code § 22-3221(a)). Hoover-Hankerson, 406 F. Supp. 2d at 78.

The co-defendants' joint jury trial began on June 24, 2004. During trial, the government introduced hundreds of witness vouchers with Hoover-Hankerson's name signed on the attorney signature line for which the Superior Court had paid the purported witnesses. (Gov.'s Opp'n at 7; see also Trial Tr., June 28, 2004, at 149-52.) Several witnesses testified that they participated in the voucher scheme by cashing the witness vouchers that were originally issued in blank to Hoover-Hankerson and that Hoover-Hankerson signed, even though the witnesses had never been subpoenaed and did not appear in the case for which they received the voucher. (See, e.g., Trial Tr., June 29, 2004, at 42-46; 98-99; 158-59.) Michael Taylor was one such witness. (Id. at 158-59.) Before trial, Taylor made an out-of-court identification of Hoover-Hankerson based on his having repeatedly seen Hoover-Hankerson together with Hoover and Troy Robinson, another investigator. (See id. at 183:4-23, 184:12-25.) Taylor also identified Hoover-Hankerson in court during his testimony. (Id. at 185:8-18.)

Hoover-Hankerson called Robinson as a witness at the trial. Robinson worked as an investigator for Hoover-Hankerson. (Trial Tr., July 6, 2004 a.m., at 5:17-18.) Although he admitted having

participated in witness voucher fraud with another CJA attorney (<u>id.</u> at 30-31), he testified that Hoover-Hankerson never gave him a witness voucher to give to someone who was not a witness in a case, and she never conspired with him to participate in voucher fraud. (<u>See</u> Trial Tr., July 6, 2004 a.m., at 5-9, 29:17-25, 76:3-9.) The jury found Hoover-Hankerson guilty on all counts.

Hoover-Hankerson had several different attorneys representing her at various stages of the proceedings. Initially, attorneys Douglas Evans and Khadijah Ali represented her, but they moved to withdraw as counsel on May 24, 2004. (<u>See</u> Docket Entry #59, Mot. to Withdraw as Counsel; <u>see also</u> Gov.'s Opp'n at 3 ¶ 4.) On June 27, 2004, attorney James Becker entered his appearance, and Evans's and Ali's motion to withdraw was then granted. (Gov.'s Opp'n at 3 ¶ 4.) Following trial, Hoover-Hankerson moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal claiming that the evidence was insufficient to support her conviction, and while her motion was pending, attorney Danny Onorato entered his appearance as her counsel. (<u>Id.</u> ¶¶ 6-7.) Thereafter, Becker filed a motion to withdraw, which was granted. (<u>Id.</u>) Hoover-Hankerson's motion for judgment of acquittal was denied and she was sentenced to thirty-five months' imprisonment. Hoover-Hankerson appealed her conviction, and the D.C. Circuit affirmed it in 2007. <u>See</u> <u>Hoover-Hankerson</u>, 511 F.3d at 164. Thereafter, she filed this motion under § 2255

to vacate her sentence, arguing that the court lacked jurisdiction to impose the sentence it imposed, and that her various attorneys were ineffective before and during the trial. She claims that pre-trial preparation was inadequate because she suffered injuries before trial that prevented her from assisting counsel in pre-trial preparation, and that her attorneys failed to (1) object when voir dire continued in her absence; (2) investigate government witnesses; (3) obtain a handwriting expert; (4) elicit exculpatory testimony from Robinson; (5) interview Hoover for exculpatory evidence and file or renew a motion for severance; (6) object to the leadership role and abuse of trust enhancements applied to her offense level under the sentencing guidelines; (7) object to the admission of attorney vouchers; and (8) object to Taylor's out-of-court and in-court identifications.

## DISCUSSION

Section 2255 authorizes "[a] prisoner in custody . . . claiming the right to be released" to move the sentencing court to "vacate, set aside or correct" her sentence if the sentence was "imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence . . . is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255.  "The person seeking to vacate [her] sentence shoulders the burden of sustaining [her]

contentions by a preponderance of the evidence." <u>Winchester v. United States</u>, 477 F. Supp. 2d 81, 83 (D.D.C. 2007) (citing <u>United States v. Simpson</u>, 475 F.2d 934, 935 (D.C. Cir. 1973)). Specifically, she "must show 'a fundamental defect, which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" <u>United States v. Weaver</u>, 112 F. Supp. 2d 1, 6 (D.D.C. 2000) (quoting <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962)).

> Because of the premium placed on the finality of judgments, there are limited circumstances under which a court should grant a [§] 2255 motion. Collateral attack is not appropriate where a prisoner had the opportunity to raise [her] objections to [her] conviction and sentence . . . on direct appeal and failed to do so.

<u>United States v. Wilson</u>, Criminal Action No. 96-319-01 (CKK), 2005 WL 6293747, at *3 (D.D.C. Sept. 12, 2005) (citing <u>United States v. Frady</u>, 456 U.S. 152, 164 (1982)). Accordingly, "[w]hen a petitioner fails to raise an argument on direct appeal, [she] can raise [her] claim collaterally (that is, pursuant to § 2255) only if [she] can show cause and prejudice." <u>Winchester</u>, 477 F. Supp. 2d at 84 (citing <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003)). This showing requires a movant to demonstrate "(1) . . . good cause for [her] failure to raise the issue on appeal, and (2) . . . that the issue [she] is raising caused actual prejudice." <u>Id.</u> (citing <u>Bousley v. United States</u>, 523 U.S. 614,

622 (1998); United States v. Kleinbart, 27 F.3d 586, 590 (D.C. Cir. 1994)). Also, "[a]n evidentiary hearing does not need to be held when the 'motion and the files and the records of the case conclusively show the [movant] is entitled to no relief.'" United States v. Talley, 674 F. Supp. 2d 221, 223 (D.D.C. 2009) (quoting United States v. Horne, No. 99-3080, 2000 WL 60246, at *2 (D.C. Cir. Jan. 4, 2000) (noting that it is within the court's discretion whether to hold an evidentiary hearing when it is the same court that presided over the petitioner's criminal proceedings)).

I. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

An ineffective assistance of counsel claim requires proof "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different." Talley, 674 F. Supp 2d at 224 (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).[1] "Judicial scrutiny of counsel's performance must be

---

[1] While a claim not raised on appeal ordinarily may not be raised in a § 2255 motion unless the defendant can show good cause for failing to raise it and prejudice, Massaro, 538 U.S. at 504, this procedural rule does not apply to claims for ineffective assistance of counsel. This exception avoids "the risk that defendants would feel compelled to raise the issue [on appeal] before there has been an opportunity fully to develop the factual predicate for the claim [and] in a forum not best suited to assess those facts." Id. Consequently, these claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct

highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. Ultimately, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (internal citation omitted). A convicted defendant, therefore, "must identify the act or omissions of counsel that are alleged not to have been the result of reasonable professional judgment" and a "court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. The defendant also "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

---

appeal." Id.

A.  Car accident

Hoover-Hankerson asserts that "[c]ounsel's preparedness was render[ed] ineffective" because immediately before the jury trial, she was involved in a serious car accident and "therefore could not and did not assist in the preparation for trial[.]" (Def.'s Mot. under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Fed. Custody ("Def.'s Mot."), Supp'g Facts and Issues at 1.)  Hoover-Hankerson raised this same issue before trial in a supplemental motion to continue the trial for an unspecified duration.  (See Docket Entry #94, June 23, 2004 Mem. Op. and Order, at 1.)  Hoover-Hankerson asserted that she had "suffered injuries in a car accident and that the loss of two days and her motor vehicle [had] hampered her ability to effectively assist counsel." (Id. at 9.)  Hoover-Hankerson, however, was neither hospitalized nor incapable of standing trial, and her supporting medical exhibits described her injuries as minor, predicted that they would improve after three days, and required only ibuprofen for pain and inflammation. (Id.)  Thus, her pre-trial motion was denied.  On the first day of trial, Hoover-Hankerson's counsel renewed orally the defendant's motion, arguing that the defendant was handicapped from the car accident.  (Trial Tr., June 24, 2004, at 31:3-6, 16-25.)  The oral motion was denied because Hoover-Hankerson's evidence did not warrant a continuance.  (Trial Tr., June 24,

2004, at 34:16-20.) On the second day of trial, Hoover-Hankerson's attorney asked, although unsuccessfully, that the motion to continue the trial based on Hoover-Hankerson's alleged handicap be reconsidered. (See Trial Tr., June 25, 2004, 36:18-23; 32:17-23.)

The defendant now rehashes this claim. However, she fails to present any new evidence to show that her injuries were more severe than they otherwise were found to be during trial. Nor does she present facts to show that her injuries rendered her unavailable to assist in trial preparation and incapable of standing trial. Even taking as true Hoover-Hankerson's assertion that she was handicapped and unable for two days to assist her attorney in pre-trial preparation, she neither alleges nor demonstrates that absent the car accident and her inability to assist in pre-trial preparation for just two of the over 400 days since her indictment, the decision reached by the jury would have been different. Thus, she fails to affirmatively show prejudice. Strickland, 466 U.S. at 693. In addition, on appeal, this argument was "considered and rejected" as one of several "arguments that merit[ed no] discussion." United States v. Hoover-Hankerson, 511 F.3d at 172 n.6. (See Brief of Appellants at 20-24, United States v. Hoover-Hankerson, et al., Nos. 06-3056, 06-3057 (D.C. Cir. June 14, 2007).) Because claims that have already been rejected on direct appeal ordinarily may not be

relitigated under § 2255, In re Ng, No. 00-3114, 2001 WL 793707, at *1 (D.C. Cir. June 12, 2001); United States v. Jones, No. 98-3140, 1999 WL 414221, at *1 (D.C. Cir. May 18, 1999), and Hoover-Hankerson has not shown prejudice, this claim warrants no relief.

B. Voir dire

During voir dire, Hoover-Hankerson said that she felt ill and asked to be excused from the proceedings. (Trial Tr., June 24, 2004, at 137:16-17.) She asserts that her counsel was deficient for failing to object to voir dire continuing during her absence for medical treatment and that she "was unaware that the selection of jurors was continuing in her absence[.]" (Def.'s Mot., Supp'g Facts and Issues at 1.) The record, however, contradicts the defendant's assertion. Before Hoover-Hankerson left the courtroom, Becker was asked whether Hoover-Hankerson waived her right to be present during voir dire and Becker responded yes. (Trial Tr., June 24, 2004, at 137:18-20.) Although Hoover-Hankerson did not orally second Becker's statement, voir dire continued throughout the rest of the day with Hoover-Hankerson absent for at least a portion of it. The following morning, Hoover-Hankerson failed to appear at court, and proceedings were stopped altogether until she returned because she had then revoked Becker's authority to waive her presence. See Hoover-Hankerson, 511 F.3d at 169. Thus, the

record demonstrates that voir dire never took place in Hoover-Hankerson's absence without her explicit waiver.

Further, Hoover-Hankerson complained on direct appeal that her absence during part of the voir dire violated her Federal Rule of Criminal Procedure 43 and Sixth Amendment confrontation clause right of presence, and her due process rights under the Fifth Amendment. (Brief of Appellants at 31-38.) The D.C. Circuit held that "when a defendant is in court during voir dire and her attorney states that she wishes to leave and that she is waiving her right to be present, that is an effective waiver regardless whether the defendant orally seconds her attorney's statement to the court." Hoover-Hankerson, 511 F.3d at 169-70. Because the record reflects that Hoover-Hankerson waived her right to be present during that part of voir dire and Becker's conduct reflected no legal infirmity, Hoover-Hankerson's ineffective assistance argument as to this claim lacks merit.

C. <u>Suppression of evidence</u>

Hoover-Hankerson asserts that her attorney failed to "object to introduction [of] the attorney vouchers that were introduced into trial." (Def.'s Mot., Supp'g Facts and Issues at 1.) She claims that the attorney vouchers "were prejudicial and had no probative value as [to] the witness and investigator vouchers." (<u>Id.</u>) However, Evans and Ali not only opposed the government's pre-trial motion to admit the attorney vouchers at trial (<u>see</u>

Docket Entry #26), they also filed a pre-trial motion to preclude the government from using the attorney vouchers at trial (see Docket Entry #62). Further, Becker reiterated the objection during trial. (Trial Tr., June 28, 2004, at 152:20-23, 153:21-25; 154:1-17; see also id. at 173:13-17 (counsel stating Hoover-Hankerson's "objection that the 404(b) evidence [concerning defendant's billing] not come in at all.").) Hoover-Hankerson's assertion lacks merit as the record directly undermines it.[2]

D. Handwriting expert

Hoover-Hankerson also asserts that her counsel was ineffective for failing to obtain an expert witness or a handwriting expert to testify on her behalf. (Def.'s Mot., Supp'g Facts and Issues at 1.) Declining to call or investigate an expert can be a strategic decision that falls well within the range of reasonable professional assistance. See, e.g., United States v. Valencia-Rios, 639 F. Supp. 2d 98, 106-07, 110 (D.D.C.

---

[2] Hoover-Hankerson also states that her "[c]ounsel did not investigate any of the government witness[es]." (Def.'s Mot., Supp'g Facts and Issues at 1.) However, she fails to include any information detailing her claim, such as the nature of the information her attorney might have obtained from any witness or the witnesses whom the attorney would have investigated. Nor does she allege that the information would have changed the outcome of her case. A movant must affirmatively prove that her counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. See, e.g., United States v. Smith, No. 97-3121, 1998 WL 939501, at *2 (D.C. Cir. Dec. 14, 1998). Her vague claim unsupported by any facts does not establish that counsel's alleged failure to investigate government witnesses was unreasonable.

2009) (finding that counsel's decision about whether to call or investigate certain lay and expert witnesses stemmed from a strategic decision that was within the range of competent professional assistance). Hoover-Hankerson fails to plead any facts to substantiate her claim that her counsel's decision not to obtain an expert witness was outside of the range of competent professional assistance. Further, Hoover-Hankerson does not allege that obtaining an expert witness likely would have changed the outcome of the case.[3] Thus, Hoover-Hankerson has not shown either unprofessional errors or prejudice regarding this claim.

E. <u>Exculpatory information from Troy Robinson</u>

Hoover-Hankerson asserts that her attorney failed to examine or obtain exculpatory testimony from Robinson. (Def.'s Mot., Supp'g Facts and Issues at 1.) Contrary to Hoover-Hankerson's bare assertion, however, her counsel did call Robinson as a witness for Hoover-Hankerson at trial and did elicit from him exculpatory testimony. (<u>See</u> Trial Tr., July 6, 2004 a.m., at 5-9, 29:17-25, 76:3-9.) For example, Robinson testified that Hoover-Hankerson never gave him any witness vouchers signed by Hoover-Hankerson for witnesses who were not involved in a case

---

[3] Counsel's choice was not surprising. The government's handwriting expert positively identified hundreds of questioned signatures as being those of Hoover-Hankerson. (Trial Tr., June 30, 2004, at 43.) The jury also had multiple known samples of Hoover-Hankerson's signature to compare for themselves to the questioned signatures on the numerous vouchers. (<u>Id.</u> at 11-13.) This was not fertile ground for finding reasonable doubt.

(id. at 8:16-18); that he received only 10 blank witness vouchers signed by Hoover-Hankerson (id. at 8:7-11); that Hoover-Hankerson never gave him a witness voucher to give to his family members to receive kickbacks (id. at 8:19-20); and that he never conspired with her about illegal vouchers (id. at 76:3-9).  Further, Hoover-Hankerson again has not substantiated with facts her assertion.  She fails to show what type of additional exculpatory testimony Robinson could have provided and how such testimony reasonably might have changed the outcome of the trial.  Hoover-Hankerson, therefore, has failed to carry her burden of showing that counsel's conduct at trial with respect to Robinson's testimony was prejudicial or unreasonable.

> F. <u>Exculpatory evidence from Benjamin Hoover and failure to file or renew severance motion</u>

Hoover-Hankerson claims that her counsel failed to file or renew a motion to sever her case from that of her co-defendant.  The record reflects otherwise.  On June 27, 2003, Hoover-Hankerson's attorney filed a motion to sever her case from Hoover's case.  (See Docket Entry #13, Mot. for Severance of Defendants.)  In addition, while there is no evidence that Hoover-Hankerson's attorney renewed the defendant's motion to sever, the defendant provides no evidence that this alleged failure prejudiced her.

Hoover-Hankerson also asserts that her counsel failed to interview co-defendant Hoover, and that Hoover "could have and

would have provided exculpatory evidence as to [her] innocence." (Def.'s Mot., Supp'g Facts and Issues at 1.)  As with her other claims, however, Hoover-Hankerson has failed to carry her burden.  She submits no affidavit or evidence demonstrating that Hoover could have provided exculpatory testimony sufficient to create a reasonable probability that the result of the trial would have been different.  See Strickland, 466 U.S. at 693-94.  Hoover-Hankerson also fails to submit any evidence showing that Hoover's counsel even agreed to have his client submit to an interview by a co-defendant's lawyer, or that the failure to interview Hoover was an unprofessional and unreasonable mistake.

Further, as the government notes, Hoover-Hankerson filed a motion to sever her case based on a concern that the government would introduce in a joint trial a confession by a non-testifying Hoover that would incriminate her in violation of her right of confrontation.  Hoover-Hankerson never raised in her motion or at oral argument on the motion the possibility that her co-defendant would testify on her behalf.  (See Docket Entry #13, Mot. for Severance of Defendants; Mot. Hr'g Tr., Nov. 21, 2003, at 6-9.)  This claim fails.

G. Taylor's identification

Hoover-Hankerson asserts that her attorney did not object to Taylor's out-of-court and in-court identifications of her.  Again, the record shows otherwise.  Before trial, on

June 4, 2004, Evans filed a motion to suppress Taylor's out-of-court identification.  (See Docket Entry #97, Mot. to Supp. Out of Court Identification by Celicia Hoover-Hankerson.)  On June 24, 2004, Hoover-Hankerson's motion was denied.  (See Docket Entry #98, Mem. Op. and Order Denying Defendant's Mot. to Suppress Out-of-Court Identification.)  During trial, when the government asked Taylor to identify Hoover-Hankerson in court, defense counsel twice objected to the in-court identification, but the objections were overruled.  (Trial Tr., June 29, 2004, at 185:2-22.)  Because Hoover-Hankerson's claim is directly contradicted by the record, she is entitled to no relief on this claim.

H.    Sentencing calculations

At sentencing, Hoover-Hankerson's sentencing guidelines base offense level was increased based upon a loss amount not found by a jury,[4] and increased for abuse of trust and her supervisory and leadership role in the offense.  (See Def.'s Mot., Supp'g Facts and Issues at 1.)  Hoover-Hankerson now alleges that her attorney failed to object to the imposition of the additional points.  The record reflects that Onorato objected to the sentencing enhancements on three separate occasions.  He objected to the

---

[4]   The court of appeals rejected Hoover-Hankerson's arguments that the loss calculation under § 2B1.1 of the sentencing guidelines manual must be identical to the jury's lower forfeiture verdict, and that the loss calculation here was unreasonable.  Hoover-Hankerson, 511 F.3d at 171-72.

enhancements in his supplemental memorandum in aid of sentencing submitted before the sentencing hearing (see Def.'s Supp. Mem. in Aid of Sent. at 6-9); he reiterated orally the objection during the sentencing hearing (Partial Tr. of Sent. Proceedings, March 17, 2006, at 6-12); and he objected to the enhancements after the hearing through a motion to correct Hoover-Hankerson's sentence. (See Celicia Hoover-Hankerson's Mot. to Correct Sent. at 1, 3-4.) Because this allegation is belied by the record, it is without merit.

## II. UNLAWFUL SENTENCING CLAIM

Hoover-Hankerson also complains that the court was without jurisdiction to impose a sentence based upon the guidelines enhancements that increased her base offense level using facts not found by the jury. While couched as a jurisdictional challenge, her argument actually alleges a violation of her Sixth Amendment right to a jury trial. See Weedon v. United States, 666 F. Supp. 2d 1, 3 (D.D.C. 2009). However, she did not challenge on appeal the use of the abuse of trust and role enhancements. Her sentencing challenge on appeal was limited to the proper loss amount attributable to her (Brief of Appellants at 58-65), a challenge the court rejected. See n.4, supra.

This claim is limited by the procedural default rule, which "generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the

defendant shows cause and prejudice." United States v. Hughes, 514 F.3d 15, 17 (D.C. Cir. 2008). "This rule 'respect[s] the law's important interest in the finality of judgments' and conserved judicial resources." Id. (quoting Massaro, 538 at 504). Because Hoover-Hankerson failed to raise this issue on appeal and she presents no argument as to why she failed to do so, her claim is procedurally barred.[5]

## CONCLUSION

Because Hoover-Hankerson's § 2255 motion is unsubstantiated and raises a barred claim, it will be denied. An appropriate Order accompanies this Memorandum Opinion.

SIGNED this 21st day of June, 2011.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge

---

[5] Even if the claim were not procedurally barred, it would fail on the merits. Blakely v. Washington, 542 U.S. 296, 303 (2004), held that a state sentence violated the Sixth Amendment when it exceeded the maximum that could be imposed based upon facts found by a jury or admitted by the defendant. United States v. Booker, 543 U.S. 220 (2005), held that the federal sentencing guidelines likewise violated the Sixth Amendment by requiring judges to impose sentences that were enhanced by facts that were found by judges rather than found by juries or admitted by defendants. However, Booker remedied the infirmity by declaring the guidelines advisory rather than mandatory. Id. at 245. Hoover-Hankerson was sentenced in 2006 when the guidelines were advisory, not mandatory. Thus, her Sixth Amendment claim is unavailable to her.